UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

IN RE APPLICATION OF
MARE SHIPPING, INC., et al.                                  13 MISC 00238


------------------------------------------------------------------X

**OBJECTIONS OF BRIAN D. STARER TO**
***SUBPOENA DUCES TECUM* AND *AD TESTIFICANDUM***
<u>**SERVED JULY 12, 2013**</u>

Pursuant to Fed. R. Civ. P. 45, third-party BRIAN D. STARER, ESQ., by his undersigned counsel, objects to the subpoena *duces tecum* and *ad testificandum* served on him on July 12, 2013 (the "Subpoena") as follows.

<u>**GENERAL OBJECTIONS**</u>

1.   *The Subpoena Sets Unreasonable Deadlines, Subjecting Respondent To Undue Burden.*

a.   The Subpoena is addressed to a partner in a law firm, and calls for the production of nine (9) categories of documents, each of which is clearly privileged as described.  The Subpoena was served after 4:00 P.M. ET on a Friday, and demands that Respondent to produce responsive documents by 9:00 A.M. the following Thursday, *i.e.*, at the opening of business on the fourth business day after the Subpoena was served.

b.   As a practical matter, compliance with the Subpoena would require Respondent to search and review files reflecting his work and that of the two law firms at which he was a partner -- Holland & Knight LLP ("H&K") and Squire Sanders (US) LLP ("Squire Sanders") -- during the ten-year period that he worked on a lawsuit, now dismissed, styled *Reino de España v. American Bureau of Shipping*, that was before this Court, under docket number 03 Civ. 3573 (LTS)(RLE), and before the Court of Appeals,

under docket number 10-3518-cv, starting on May 16, 2003 and continuing through August 29, 2012 (the "New York Litigation").  Respondent, a distinguished member of the New York maritime bar, commenced his efforts on behalf of the Reino de España, *i.e.*, the Kingdom of Spain (hereinafter, the "Government of Spain") in November, 2002, immediately after the sinking of the *MT Prestige*, an oil tanker that broke up off the Spanish coast on November 19 of that year, discharging millions of gallons of oil into Spanish territorial waters, causing damage in the billions of dollars.

c.  The files in question consist of:

    **(i)   Paper files**

        (1)   Nine hundred sixty-eight (968) transfile boxes, each 16"L x 13" W x 11" H, currently stored in a warehouse.  Each box contains between 2500 and 3000 pages of documents.  Some part of them must be retrieved and searched.  They contain, *inter alia*, original witness files, including plans and images, documents obtained from witnesses and handwritten meeting notes, some in English, some in Spanish and some in Greek.

        (2)   118 volumes of correspondence -- approximately 35,000 pages.  Depending on the sender or recipient, correspondence may be in Spanish, or in Greek or in English.  Correspondence sent by Respondent's law firms may also have been stored electronically, although this would not necessarily be true of the final versions of original, hand-signed letters and facsmiles.  In addition, much received correspondence came in by mail and facsimile, and was retained chronologically only in these paper files.

(3)  Five (5) unindexed boxes -- roughly 10,000 pages -- of attorneys' working files, also containing documents in multiple languages.

**(ii)     Electronic documents**.

(1)     An Outlook file containing 18,171 emails, sent or received by lawyers at H&K and Squire Sanders from 2002 to the present. Many of these emails are between the American lawyers and representatives of their client, the Government of Spain, and are written in Spanish.

(2)     Approximately 2,500 (two thousand five hundred) pages of mostly single-spaced billing records of H&K, and approximately 1,700 (one thousand seven hundred) pages of mostly single-spaced billing records of Squire Sanders.

(3)     A local drive containing 12 Summation databases, totaling approximately 336 gigabytes in size. Because the version of Summation used to create these databases will not run on the version of Windows installed on Squire Sanders' computers, the Firm has a license for the legacy software and, at most, two (2) stand-alone computers that can be used to search these databases. Written documents in these databases are in Spanish and Greek as well as in English.

(4)     A 87-megabyte database containing photographs and images of documents such as maps, charts, diagrams and other exhibits, as well as transcripts and expert reports. Most documents in this database were not converted to OCR, and are therefore not electronically searchable. The only way to review them is to retrieve them individually and review them. Again, documents are in English, Spanish and Greek.

      d.      Upon completion of the challenging task of retrieving, searching and reviewing the vast files generated by the law firms, Respondent must translate documents not in English to review them for content and determine whether they are responsive. The non-responsive parts of the densely printed billing records and of any other partially-responsive documents must be redacted, and a log must be created of the responsive documents or parts of responsive documents asserted to be subject to the attorney-client privilege or work product doctrine.

      e.      Any responsive document, whether or not subject to the attorney-client privilege or work product doctrine under the law of New York, must be reviewed by Respondent's client, the Government of Spain, to determine whether Spain has:

      (1)      Privileges under Spanish law that it may assert to require that Squire Sanders not produce some or all of the documents; and/or,

      (2)      Rights under Spanish law that would affect the "receptivity of the [Spanish courts] to United States federal court judicial assistance." *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 124 S. Ct. 2466, 159 L. Ed. 2d 355 (2004).

      f.      Preparation for Respondent's deposition, set by the Subpoena for July 23, 2013, would necessitate thorough study of all responsive documents by Respondent and his counsel, in order that appropriate objections may be made to questions trenching upon communications protected by the attorney-client privilege or upon documents recording work protected by the work-product doctrine, or upon rights or privileges that must be asserted under Spanish law.

2. *The Subpoena calls for production of documents that are exempt from production pursuant to the attorney-client privilege and/or the work product doctrine.*

3. *The document production requests set forth in the Subpoena are overbroad and burdensome in that, on their face, they reflect no attempt to craft requests specific to the issues for which Applicants claims they need the documents for use in the foreign proceeding in which they claim they need them.*

4. *The documents sought in the Subpoena cannot be used in any foreign proceeding, and, therefore, are not properly subject to 28 U.S.C. § 1782.*

The documents and testimony demanded are claimed to be sought for use in a mixed criminal/civil proceeding – the *Juicio Prestige* – before the *Audiencia Provincial de A Coruña* in Spain  The trial in that case opened on October 16, 2012, and the Court heard 133 fact witnesses and 98 experts.  The Chief Judge, Juan Luis Pia, declared the trial "*visto para sentencia*," *i.e.*, "judgment pending," on Wednesday, July 10, 2013, the same day the Subpoena was issued.  Under Spanish law, no further evidence may be proffered once a trial has been declared "*visto para sentencia*," by the Court.  The closure of the Spanish trial proceedings is not mentioned in the Application, Memorandum of Law, or in the Tisdale Declaration, all submitted in support of Applicants' request for the Subpoena.  Only in the Supporting Declaration of Jose Maria Ruiz Soroa, at ¶16, does the statement appear that "Closing submissions are scheduled to conclude on or about July 10, 2013."  This is a concession, albeit a buried one, that there are no foreign proceedings in which the evidence sought can be proffered.

28 U.S.C. §1782 does not require that a proceeding be pending or imminent -- only that the evidence be subject to eventual use – but a concluded proceeding is clearly one in which no eventual use can be contemplated.  In this case, the the owner of the evidence sought in the

Subpoena is not Respondent or his law firm: the files to be searched are the property of their client, the Government of Spain. The Government of Spain is a party to the trial for which Applicants purport to seek discovery pursuant to 28 U.S.C. §1782, and Applicants have made no showing that the Spanish Court could not order the Government of Spain to produce the evidence at issue, or could not have granted such an order pursuant to a timely motion by Applicants. *See Intel*, 542 U.S. at 264 (when the person from whom discovery is sought is a participant in the foreign proceeding . . ., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad). Accordingly, the fact that Applicant waited until the foreign proceedings were finished to seek the Subpoena strongly suggests an effort to develop evidence for some purpose other than one permitted by 28 U.S.C. §1782.

5. *The brevity of the deadlines set in the subpoena, combined with the volume of material that must be reviewed, makes it impossible for Respondent to propound comprehensive general and considered specific objections to each category of documents sought.*

Respondent's undersigned counsel has made Applicant's counsel aware of this problem; however, Applicant's counsel refused to accord Respondent an appropriate extension of time to review documents and formulate objections based on the actual content of the files. Accordingly, Respondent asserts the General Objections stated herein with respect to each and every request and category of document or information called for in the Subpoena and reserves his rights to amend these Objections, to assert additional general objections, and to assert all specific objections, including but not limited to objections pursuant to the laws of Spain, once an appropriate review of potentially-responsive documents and information has been completed.

6. *Respondent objects to the Subpoena to the extent that it seeks documents that are part of the public record in the New York litigation.*

7. *Respondent objects to the Subpoena in that it fails to meet the mandatory requirements of Fed.R. Civ. Pro. 45 (a)(1)(A)(ii) as to form and content.*

The subpoena as served does not state the civil action number of the action in which it was issued.

Dated:  New York, New York
             July 17, 2013

           **SQUIRE SANDERS (US) LLP**

BY: *Victor Genecin*_____

     Richard L. Mattiaccio (RM 4764)
     Victor Genecin (VG 9733)
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
Tel:212-872-9800
richard.mattiaccio@squiresanders.com
victor.genecin@squiresanders.com

*Attorneys for Third-Party Respondent*
Brian D. Starer, Esq.

NEWYORK/161298.1